```
          IN THE UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF ARKANSAS
                    WESTERN DIVISION

PET QUARTERS, INC.                                    PLAINTIFF


V.                    CASE NO. 4:04-CV-697 (RSW)

THOMAS BADIAN, RHINO ADVISORS, INC.,
AMRO INTERNATIONAL, S.A., SPLENDID ROCK
HOLDINGS, LTD., LADENBURG THALMANN & CO., INC.,
MICHAEL VASINKEVICH, H.U. BACHOFEN,
HANS GASSNER, JAMES DAVID HASSAN,
MARKHAM HOLDINGS LIMITED, CURZON CAPITAL
CORPORATION, WESTMINSTER SECURITIES CORP.,
AND JOHN DOES 1 TO 50 INCLUSIVE,                     DEFENDANTS
```

**OPINION AND ORDER**

**I. Introduction**

Before the Court is defendant Amro International's, Splendid Rock Holdings', and Rhino Advisors' Motion to Dismiss or in the Alternative to Transfer for Improper Venue (doc. #55). The defendants argue that venue is improper because this dispute falls within the scope of several mandatory forum selection clauses that require arbitration of the dispute in New York. The plaintiff has responded and opposes the Motion. For the reasons stated below, the Court finds that all of Pet Quarters' claims against Amro, Splendid Rock, and Rhino must be submitted to arbitration in New York.

1

**II.   Background**

Plaintiff Pet Quarters, Inc., is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in Arkansas. Pet Quarters is an Internet supplier of pet food and other pet supplies for both consumers and professionals. Pet Quarters sells its goods over the Internet and through a mail order catalog. Defendant Amro International ("Amro") is a foreign corporation, with its principal place of business in Zurich, Switzerland. Defendant Splendid Rock Holdings ("Splendid Rock") is also a foreign corporation, with its principal place of business in Furstenturn, Germany. Defendant Rhino Advisors ("Rhino") is a corporation organized under the laws of New York, with its principal place of business in New York, New York. Amro and Splendid Rock are investment capital firms, and Rhino is an "investment advisor" that managed investments for Amro and Splendid Rock. Separate defendant Thomas Badian is Rhino's president.

In early 1999, Pet Quarters began to look for capital funding sources to help aid in the growth of the business. Following a series of conversations and referrals, Pet Quarters entered into three financing arrangements with Thomas Badian and his investment companies (collectively "investment agreements"). On February 23, 2000, Pet Quarters entered into a common stock

and warrants purchase agreement with Amro. Under the agreement, Pet Quarters sold shares of its common stock to Amro for a total of $1.5 million. The agreement contained repricing provisions under which Amro could demand additional shares of stock in the event the share price fell over a defined period of time. In addition, the agreement contained an arbitration clause that read, "Any dispute under this Agreement shall be submitted to arbitration under the American Arbitration Association (the "AAA") in New York City, New York . . . ."

On March 15, 2000, Pet Quarters entered into an equity line of credit with Splendid Rock, another Badian investor. Pet Quarters could periodically draw on the line of credit in exchange for shares of common stock, issued at a discount to market price. This agreement contained the same arbitration clause as the stock and warrants agreement.

On May 2, 2000, Pet Quarters entered into a loan agreement with Amro in the amount of $1 million. The loan was made subject to the terms and conditions of a convertible debenture, which allowed Amro to convert any outstanding principal into shares of Pet Quarters' common stock after a certain period of time. The loan agreement did not contain a forum selection or arbitration clause.  By March 2001, Pet Quarters' stock was trading at pennies per share, down from a high of over six dollars on September 1, 1999.

On July 21, 2004, plaintiff filed this action against thirteen named defendants, alleging their involvement in a scheme to defraud plaintiff and to manipulate downward the price of Pet Quarters' securities in violation of federal and state laws. In general, plaintiff alleges that the defendants are seasoned practioners of a "death spiral" funding scheme in which they provide financing to a target company and proceed to aggressively short-sell its stock in the hope that such short sales will drive down the price of the target company's securities and therefore allow the defendants to take advantage of increased conversion rights. Pet Quarters accuses Amro, Splendid Rock, and Rhino of participating in the "death spiral" scheme to manipulate the price of Pet Quarters' stock.

The Complaint sets forth twelve claims against Amro (Counts I, II, III, IV, VI, VII, IX, XI, XII, XIII, XV, and XVI), twelve claims against Splendid Rock (Counts I, II, III, IV, VI, VII, IX, X, XII, XIII, XV, and XVI), and twelve claims against Rhino (Counts I, II, III, IV, VI, VII, VIII, XII, XIII, XIV, XV, and XVI). Defendants move to dismiss the Complaint pursuant to Rule 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure, as well as 28 U.S.C. § 1406.

**III. Discussion**

    A.    <u>Standard of Review</u>

4

The clauses at issue in this Motion are not purely forum selection clauses. The clauses are actually mandatory arbitration clauses coupled with forum selection clauses. Taken together, the clauses mandate that any dispute arising under the Agreements be arbitrated under the American Arbitration Association in New York City. Because the dispute in this Motion concerns the enforceability of arbitration agreements contained in contracts "evidencing a transaction involving commerce," the Federal Arbitration Act ("FAA") applies. 9 U.S.C. § 2 (1999).

Although the defendants do not style this Motion as one to compel arbitration under the FAA, 9 U.S.C. § 4, their main request is that the Court compel the plaintiff to arbitrate. The Court must decide whether the arbitration agreements between the parties should be enforced to require their disputes to be arbitrated. Accordingly, the Court construes this Motion as made under the FAA. See Siebert v. Amateur Athletic Union of the U.S., Inc., No. 04CV1461JMRFLN, 2006 WL 650498, at *12 n.18 (D. Minn. March 14, 2006)(construing motion under Rule 12(b)(6) as a motion to compel arbitration under the FAA).[1]

B.   Enforceability of Arbitration Agreements

---

[1] It is an open question in the Eighth Circuit whether a motion to dismiss on the basis of a forum selection or arbitration clause should be brought under Rule 12(b)(3) or Rule 12(b)(6). Rainforest Cafe, Inc. v. EklecCo, L.L.C., 340 F.3d 544, 546 n.5 (8th Cir. 2003). The Court will not address this issue since the defendants have moved under both sections. Id.

The purpose of the FAA was to establish a "federal policy favoring arbitration agreements." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). When a party asks the Court to compel arbitration, the Court must first decide whether "the making of the agreement for arbitration or the failure to comply therewith" is an issue. 9 U.S.C. § 4. The role of the Court is limited to asking (1) "whether the agreement for arbitration was validly made" and (2) "whether the dispute falls within the scope of the arbitration agreement." Medcam, Inc. v. MCNC, 414 F.3d 972, 974 (8th Cir. 2005). If the parties have agreed to arbitration, the Court must order them to proceed to that forum. Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., 334 F.3d 721, 726 (8th Cir. 2003).

1. Whether the Arbitration Agreements were Validly Made?

The plaintiff's first contention is that Rhino cannot enforce the arbitration clauses because it did not sign the investment agreements. The defendants argue that Rhino can enforce the arbitration clauses because it is an agent and alleged co-conspirator of the parties to the contracts. The Court agrees with the defendants.

An arbitration agreement is enforceable by an employee or agent of a party to an agreement even though the employee or agent did not sign the actual agreement. Lee v. Chica, 983 F.2d

6

883, 886-87 (8th Cir. 1993). This rule is especially so when allegations against the agent arise out of the alleged relationship with a signing party. Id. at 887.

In the present case, Rhino was an agent of Amro and Splendid Rock throughout the negotiation and execution of the investment agreements. Amro and Splendid Rock employed Rhino as an investment advisor and allowed Rhino to negotiate the investment agreements on behalf of Amro and Splendid Rock. It is undisputed that plaintiff knew of Rhino's client relationship with Amro and Splendid Rock from the parties' first contact on January 28, 2000. Plaintiff cannot now claim that Rhino was not even an agent of Amro and Splendid Rock when it refers to all three defendants collectively as "Badian investors" and "Badian entities" throughout the Complaint.

In addition, all of plaintiff's allegations against Rhino arise out of Rhino's representation of Amro and Splendid Rock in the negotiation of the agreements. Rhino was responsible for the contracts in which the arbitration clauses were contained and the investments that gave rise to this suit. Therefore, the Court holds that Rhino, as a disclosed agent, can enforce the terms of the arbitration clauses contained in the investment agreements even though it did not sign them. See Nesslage v. York Sec., Inc., 823 F.2d 231, 233-34 (8th Cir. 1987)(holding that disclosed agent of broker could enforce arbitration agreement against

7

customer).

The plaintiff's next contention is that the arbitration clauses are unenforceable by any of the defendants because arbitration in New York is cost-prohibitive. Pet Quarters argues that the high cost of arbitration in New York would effectively deprive Pet Quarters of its day in court and opportunity to vindicate its statutory rights.

Arbitration is generally an adequate forum for a party to present statutory rights. Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 89 (2000). In light of the strong federal policy favoring arbitration, the Court must enforce a valid arbitration agreement unless a party can show that it will not be able to vindicate its statutory rights. Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004).

Large arbitration costs can preclude a litigant from effectively vindicating its statutory rights. Green Tree, 531 U.S. at 90. Pet Quarters bears the burden of proving that arbitration would be prohibitively expensive. Id. at 92. As the Eighth Circuit has explained,

> The party seeking to avoid arbitration should present specific evidence of likely arbitrators' fees and its financial ability to pay those fees so that the court can determine whether the arbitral forum is accessible to the party. If the party does not meet its burden, the district court must honor the arbitration agreement and compel arbitration.

Faber, 367 F.3d at 1054.
8

Pet Quarters has failed to meet its burden of proof in the present case. Pet Quarters relies on the affidavit of Steve Dempsey, a Pet Quarters director. Dempsey states, "Given the time one would expect the arbitrators to spend on this case, it is anticipated that the arbitrators' bills would be quite large and way beyond any capabilities of PQI." He then estimates an hourly rate of $400 per hour per arbitrator and an estimated length of arbitration of 10 days. These unsupported statements provide no basis on which this Court could reliably ascertain the actual costs and fees Pet Quarters would incur arbitrating its claims. Such hypothetical and speculative evidence is insufficient to invalidate the arbitration agreements. See Green Tree, 531 U.S. at 91 n.6 (finding evidence of average arbitral fee of $700 per day and lists of fees incurred in cases involving other arbitrations to be insufficient).

In addition, Pet Quarters never fully explored the AAA's procedures precisely designed to ensure arbitration does not become cost prohibitive. For example, the AAA has a procedure to waive its administrative fees upon a showing of extreme hardship. The AAA also permits parties to waive oral hearing and present evidence by way of telephone or deposition. In many cases, defendants agree to pay the arbitration fees. Furthermore, some of the fees are controlled by the way the plaintiff presents its case, such as the size of plaintiff's demand. In Dobbins v.

9

Hawk's Enterprises, 198 F.3d 715, 717 (8th Cir. 1999), the Eighth Circuit held that a party must fully explore the AAA's fee waiver provision before a court will determine whether an arbitration clause is cost prohibitive. Pet Quarters has done no exploration here.

The arbitration clauses are also not unconscionable under state law. Pet Quarters has provided no evidence that the clauses were unconscionable when it signed the agreements, as required under New York law. "An unconscionable contract 'is one which is so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" Sablosky v. Gordon Co., Inc., 535 N.E.2d 643 (N.Y. 1989)(quoting Gillman v. Chase Manhattan Bank, 534 N.E.2d 824 (N.Y. 1988)). Measured against this standard, the arbitration clauses contained in the investment agreements are not unreasonable as a matter of law.

    2.   Scope of Arbitration Agreements

Having decided that the parties entered into valid arbitration agreements, the Court must now decide whether the parties agreed to arbitrate the particular disputes involved in this case. Medcam, Inc. v. MCNC, 414 F.3d 972, 974 (8th Cir. 2005). Arbitration is a matter of contract, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of America v. Warrior &

Gulf Navigation Co., 363 U.S. 574, 582 (1960). The scope of an arbitration agreement is to be determined by ascertaining the intention of the parties in the language of the arbitration clause itself. See AgGrow Oils, L.L.C. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 242 F.3d 777, 780 (8th Cir. 2001)(holding that ordinary state law contract principles apply in deciding whether parties have agreed to arbitrate a particular matter). The question of arbitrability is for the Court to decide. Id.

In the present case, the parties worded the arbitration clauses found in the investment agreements broadly to include "any dispute under this agreement." With broadly worded clauses such as these, the Court should resolve any doubts about the scope of the agreements in favor of arbitration. Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 946 (8th Cir. 2001). As the Supreme Court has explained, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986)(quoting United Steelworkers, 363 U.S. at 582-83).

The arbitration clauses contained in the investment

11

agreements encompass all of Pet Quarters' claims. The arbitration clauses apply to "any dispute" arising under the investment agreements. Counts VI, X, and XI of the Complaint assert claims for breach of contract and breach of the duty of good faith and fair dealing. These Counts directly relate to the investment agreements and therefore fall squarely under the arbitration clauses.

Counts IV, VII, IX, XIII, and XV assert claims based on common law tort and also fall within the scope of the arbitration clauses. Courts generally construe broadly worded arbitration clauses to cover tort claims that directly or indirectly relate to the parties' contractual relationship. CD Partners, LLC v. Grizzle, 424 F.3d 795, 800 (8th Cir. 2005); see also Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 693 (8th Cir. 1997)(stating that the majority of cases have found broadly worded forum selection clauses to cover tort claims); accord P & P Indus., Inc. v. Sutter Corp., 179 F.3d 861, 871 (10th Cir. 1999)(finding arbitration clause that covered "[a]ny controversy, claim, or breach arising out of or relating to this Agreement" broad enough to cover tort claims).

Here, all of Pet Quarters' tort claims relate directly or indirectly to the parties' contractual relationship and involve the same operative facts as the parallel breach of contract claims. The tort claims arise out of the parties' negotiation and

execution of the investment agreements. Accordingly, Pet Quarters' tort claims against Amro, Rhino, and Splendid Rock are subject to the arbitration clauses.

Counts I, II, III, XIV, and XVI of the Complaint are statutory claims. The FAA mandates the enforcement of agreements to arbitrate statutory claims. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1985). The Supreme Court has specifically ruled that parties can agree to arbitrate § 10b and Rule 10b-5 securities fraud claims. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987); accord Nesslage v. York Sec., Inc., 823 F.2d 231, 234 (8th Cir. 1987). As stated previously, the parties' broadly worded arbitration clauses provide for arbitration of "any dispute" arising under the investment agreements. Such language is broad enough to cover Pet Quarters' statutory claims. E.g., Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085-86 (8th Cir. 2001)(holding that RICO claims were subject to arbitration under clause that read "all disputes between them relating to this Agreement").[2]

   C.   Proper Remedy

Having found that all of Pet Quarters' claims against Amro,

---

[2] This reasoning applies to Pet Quarters' state statutory claims as well. Even if the ACA claims could be read to void arbitration of statutory claims, the FAA preempts the ACA. Southland Corp. v. Keating, 465 U.S. 1, 10 (1984); see also Arkcom Digital Corp. v. Xerox Corp., 289 F.3d 536, 539 (8th Cir. 2002)(concluding that Arkansas statutory claims are arbitrable).

13

Splendid Rock, and Rhino fall within the scope of the arbitration clauses, the Court must decide the proper remedy. This Court does not have the authority to compel arbitration in New York, as provided for in the investment agreements. <u>See</u> 9 U.S.C. § 4 (stating, "The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed"); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer</u>, 49 F.3d 323, 326-28 (7th Cir. 1995)(holding that § 4 precludes a district court from compelling arbitration outside of its district).

However, the Court will stay litigation in the current case pending completion of arbitration in New York, pursuant to 9 U.S.C. § 3. The Court will not dismiss the action as requested by the defendants. Section 3 states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, . . . , shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

The express language of the statute authorizes the Court to stay the litigation. <u>See</u> <u>Massen v. Cliff</u>, No. 02 Civ. 9292, 2003 WL 2012404, at *2 (S.D.N.Y. May 1, 2003)(holding that § 3 mandates a stay, rather than dismissal).

Furthermore, a stay is appropriate in this case because it

14

is possible that the Court will have to take further judicial action to enforce an arbitration award. Id. 9 U.S.C. § 9 provides that any party to an arbitration award "may" apply for an order confirming the award to the United States court "in and for the district within which such award was made." Although the Eighth Circuit has not specifically ruled on the issue, the majority of circuit courts have held that this language is permissive rather than mandatory. E.g., Apex Plumbing Supply, Inc. v. U.S. Supply Co., 142 F.3d 188 (4th Cir. 1998)(stating that "the majority of the circuits interpret section nine's venue provisions as permissive"). The Court believes that the Eighth Circuit would also rule this way considering it has already held that a different provision of § 9 is permissive. See Val-U Const. Co. of S.D. v. Rosebud Sioux Tribe, 146 F.3d 573 (8th Cir. 1998)(holding that "§ 9 is a permissive statute and does not require that a party file for confirmation within one year"). So, even though arbitration between the parties will happen in New York, any party to an award can apply for confirmation of such award in this Court.

**IV. Conclusion**

Defendant Amro International's, Splendid Rock Holdings', and Rhino Advisors' Motion to Dismiss or in the Alternative to Transfer for Improper Venue (doc. #55) is **DENIED.** However, the

Court construes defendants' Motion as a Motion to Stay under the FAA. The Motion for Stay is **GRANTED**. All claims against Amro, Splendid Rock, and Rhino are stayed pending the completion of arbitration in New York. There shall be no court proceedings regarding these defendants until the arbitration contracted for by the parties is complete.

**IT IS SO ORDERED**, this 9th day of May, 2006.

```
                    /s/ Rodney S. Webb
                    RODNEY S. WEBB  District Judge
                    United States District Court
```