```
          IN THE UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF ARKANSAS
                     WESTERN DIVISION
```

PET QUARTERS, INC.,                                        PLAINTIFF

V.                  CASE NO. 4:04-CV-697 (RSW)

THOMAS BADIAN, RHINO ADVISORS, INC.,
AMRO INTERNATIONAL, S.A., SPLENDID ROCK
HOLDINGS, LTD., LADENBURG THALMANN & CO., INC.,
MICHAEL VASINKEVICH, H.U. BACHOFEN,
HANS GASSNER, JAMES DAVID HASSAN,
MARKHAM HOLDINGS LIMITED, CURZON CAPITAL
CORPORATION, WESTMINSTER SECURITIES CORP.,
AND JOHN DOES 1 TO 50 INCLUSIVE,                          DEFENDANTS

**OPINION AND ORDER**

**I. Introduction**

Before the Court is defendant Westminster Securities Corporation's ("Westminster") Motion to Dismiss (doc. #59). Plaintiff has responded and opposes the Motion. For the reasons set forth below, the Motion is **GRANTED**.

**II.  Background**

Plaintiff Pet Quarters, Inc., is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in Arkansas. Pet Quarters supplies pet food and other pet supplies to consumers and professionals through the Internet and mail order catalogs. Defendant Westminster is a securities brokerage firm located in New York,

New York.

In early 1999, Pet Quarters began to look for capital funding sources to help aid in the growth of its business.[1] During this search, Pet Quarters was introduced to defendant Ladenburg Thalmann and Company, a capital investment firm. Following a series of conversations and referrals, Ladenburg introduced Pet Quarters to defendant Thomas Badian. Pet Quarters eventually entered into three financing arrangements with Badian and his investment companies.

On February 23, 2000, Pet Quarters entered into a common stock and warrants purchase agreement with Amro International ("Amro") and Markham Holdings Limited ("Markham"), both Badian investors. Under the Agreement, Pet Quarters sold 619,047 shares of its common stock to Amro and 95,238 shares to Markham, for a total of less than $1.5 million. The Agreement contained repricing provisions under which Amro and Markham could demand additional shares of stock in the event the share price fell over a defined period of time.[2]

On March 15, 2000, Pet Quarters entered into an equity line of credit with Splendid Rock Holdings ("Splendid Rock"), another

---

[1] At the time, Pet Quarters' stock traded on the Over-the-Counter Bulletin Board ("OTCBB").

[2] This Agreement also contained an arbitration clause that read, "Any dispute under this Agreement shall be submitted to arbitration under the American Arbitration Association (the "AAA") in New York City, New York . . . ."

Badian investor. Pet Quarters could periodically draw on the line of credit in exchange for shares of common stock, issued at a discount to market price.

On May 2, 2000, Pet Quarters entered into a loan agreement with Amro in the amount of $1 million. The loan was made subject to the terms and conditions of a convertible debenture, which allowed Amro to convert any outstanding principal into shares of Pet Quarters' common stock after a certain period of time. By March 2001, Pet Quarters' stock was trading at pennies per share, down from a high of more than six dollars on September 1, 1999.

On July 21, 2004, plaintiff filed this action against thirteen named defendants, alleging their involvement in a scheme to defraud plaintiff and to manipulate downward the price of Pet Quarters' securities in violation of federal and state laws. In general, plaintiff alleges that the defendants are seasoned practioners of a "death spiral" funding scheme in which they provide financing to a target company and proceed to aggressively short-sell its stock in the hope that such short sales will drive down the price of the target company's securities. Pet Quarters alleges that Westminster is involved in this "death spiral" scheme because Badian used Westminster as his brokerage firm for trading in Pet Quarters' stock. Pet Quarters goes on to allege that Westminster used its clearing broker, Pershing, to "convert short positions in PQI stock into false long positions, stack

bids and/or offers to manipulate PQI's stock price up or down, and engage in manipulative schemes."

The Complaint sets forth five claims against Westminster: (1) violation of § 10 of the Securities Exchange Act of 1934 and SEC Rule 10b-5 (Count II), (2) prima facie tort (Count VII), (3) civil conspiracy (Count XII), (4) tortious interference with contracts (Count XIII), and (5) disgorgement and restitution under the Exchange Act (Count XVI). Defendant moves to dismiss the Complaint pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, pursuant to rule 12(b)(3) for improper venue, and pursuant to Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") for failure to plead fraud with sufficient particularity.[3]

**III. Discussion**

    A.   <u>Standard of Review</u>

When considering a motion to dismiss under Rule 12(b)(6), the Court must assume that all facts alleged in the complaint are true and construe the complaint in a light most favorable to the plaintiff. <u>Coleman v. Watt</u>, 40 F.3d 255, 258 (8th Cir. 1994). The Court should grant the Motion only if the plaintiff can prove no set of facts that would entitle them to relief. <u>Id.</u> However, the

---

[3] In regard to the Motion to Dismiss for Improper Venue, Westminster joins in the Memorandum of Law in support of the Motion to Dismiss filed by defendants Amro, Splendid Rock, and Rhino Advisors (doc. #56).

Court is free to reject "legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." <u>Varner v. Peterson Farms</u>, 371 F.3d 1011, 1015 (8th Cir. 2004).

Rule 9(b) of the Federal Rules of Civil Procedure provides a heightened standard of pleading when a plaintiff alleges fraud or mistake. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Conclusory allegations that a defendant's conduct was fraudulent and deceptive are insufficient to satisfy Rule 9(b). <u>Commercial Prop. Investments, Inc. v. Quality Inns Intern., Inc.</u>, 61 F.3d 639, 644 (8th Cir. 1995).

    B.   <u>Manipulation Claim</u>

In Count II of the Complaint, Pet Quarters alleges that Westminster manipulated the market for Pet Quarters' securities in violation of § 10b of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. The defendant contends that Pet Quarters has failed to plead its manipulation claim with sufficient particularity and that the conduct alleged by Pet Quarters amounts to no more than aiding and abetting the scheme of Badian and therefore states no

basis of recovery against Westminster.[4]

Section 10(b) of the Exchange Act states that it shall be

> [U]nlawful for any person, directly or indirectly, . . .
>
> . . . .
>
>   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5, promulgated by the Securities and Exchange Commission ("SEC") under § 10(b), prohibits fraudulent conduct in the sale and purchase of securities. Specifically, the Rule states,

> It shall be unlawful for any person, directly or indirectly, . . .
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> . . . .
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The scope of conduct prohibited by Rule 10b-5 is controlled by the language of § 10(b) of the Act. <u>Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164, 173-175

---

[4] The defendant also contends that Pet Quarters' claims are barred by the applicable statute of limitations. For the reasons explained in the Court's Opinion and Order entered on April 28, 2006 (doc. #159), this argument is rejected.

(1994).

To state a claim for market manipulation, the plaintiff must adequately allege that (1) it was injured, (2) in connection with the purchase or sale of securities, (3) by relying on a market for securities, (4) controlled or artificially affected by defendant's deceptive or manipulative conduct, and (5) the defendants engaged in the manipulative conduct with scienter. In re Blech Sec. Litig., 961 F. Supp. 569, 582 (S.D.N.Y. 1997) (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199 (1976)).

Claims brought under Rule 10b-5 and § 10(b) are governed by heightened pleading standards adopted by Congress under the PSLRA. The PSLRA supercedes reliance on Rule 9(b) in securities fraud cases.[5] In re Navarre Corp. Sec. Litig., 299 F.3d 735, 742 (8th Cir. 2002). Under the PSLRA, "the complaint shall, . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Scienter under Rule 10b-5 means the intent to deceive, manipulate, or defraud. Kushner v. Beverly Enterprises, Inc., 317 F.3d 820, 827 (8th Cir. 2003)(citing Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 654 (8th Cir. 2001)). In order to survive the defendant's

---

[5] For example, the PSLRA requires that scienter be pleaded with particularity, but Rule 9(b) states that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."

Motion to Dismiss, the plaintiff's allegations must collectively add up to both a reasonable and strong inference of the required state of mind. Green Tree Fin. Corp., 270 F.3d at 660-61.

In the present case, Pet Quarters' main allegation against Westminster is that Badian made most of his trades of Pet Quarters' stock through Westminster. Specifically, Pet Quarters alleges that "[a]ll of the manipulation orchestrated by Badian, Rhino, Amro, Markham and Splendid Rock involved Westminster and was done through its trading accounts" (Compl. ¶ 100). The only other allegation against Westminster is that it used Pershing, its clearing firm, to "(i) convert short positions in PQI's stock into false long positions, (ii) stack bids and/or offers to manipulate the stock up or down, and (iii) engage in the manipulative schemes described herein." Id.

These allegations against Westiminster are insufficient because, at a minimum, the plaintiff must specify "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for securities at issue." Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC, 223 F. Supp. 2d 474, 486 (S.D.N.Y. 2002). Pet Quarters has failed to plead with particularity any wrongful action by Westminster. The plaintiff provides no specific examples of Westminster actually "converting short positions" or "stacking bids." Such conclusory

and cryptic allegations are insufficient to satisfy the heightened pleading standards of Rule 9(b) and the PSLRA. See Endovasc Ltd., Inc. v. J.P. Turner & Co., No. 02 Civ. 7313, 2004 WL 634171, at *13 (S.D.N.Y. March 30, 2004)(holding that generalized conclusory allegations of a scheme and a laundry list of terms purporting to identify what manipulative acts were performed are insufficient) aff'd in part, vacated in part, 2006 WL 558538 (2d Cir. March 8, 2006).

At most, Pet Quarters alleges that Westminster knowingly assisted Badian in the fraudulent scheme by executing stock transactions at Badian's request. However, secondary actors cannot be held liable for aiding and abetting securities fraud under § 10b-5. Central Bank of Denver, N.A. v. First Interstate of Denver, N.A., 511 U.S. 164, 177 (1994); see also Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, 135 F.3d 837, 841 (2d Cir. 1998) (recognizing that the Supreme Court's reasoning in Central Bank applies not only to aiding and abetting claims, but to conspiracy claims as well); cf. In re Blech Sec. Litig., 961 F. Supp. 569, 584 (S.D.N.Y. 1997)(finding allegations that clearing broker "directed" or "contrived" certain fraudulent trades to be sufficient). Accordingly, Count II against Westminster is **DISMISSED**.

    C.    <u>Count XVI - Disgorgement and Restitution</u>

As plaintiff admits, Count XVI is not an independent

substantive legal claim.  Rather, Count XVI represents a stand-alone request for the specific remedies of disgorgement and restitution in regard to plaintiff's § 10(b) claim against the defendant. If plaintiff is setting these particular remedies in their own Count to draw attention to their importance to plaintiff, their importance is duly noted.  However, plaintiff already asks for these remedies in its Prayer for Relief, so this Count is unnecessary.  Accordingly, Count XVI against Westminster is **DISMISSED**.

    D.   <u>Remaining State Law Claims</u>

All of the remaining claims against Westminster are based on state law. The Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a), which provides for supplemental jurisdiction. Under 28 U.S.C. § 1367(c)(3), the Court may "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." As the Eighth Circuit recently stated in <u>Gibson v. Weber</u>, 433 F.3d 642, 647 (8th Cir. 2006), "Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed . . . ."

Since the Court has dismissed Count II of the Complaint against Westminster, which is the only claim against Westminster over which the Court has original jurisdiction, the Court hereby

declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, Counts VII, XII, and XIII of the Complaint against Westminster are **DISMISSED.**

**IV. Conclusion**

For the reasons stated above, defendant Westminster's Motion to Dismiss (doc. #57) is **GRANTED.** Counts II, VII, XII, and XIII against Westminster are **DISMISSED WITHOUT PREJUDICE.** Count XVI is **DISMISSED WITH PREJUDICE**.

Pet Quarters has 20 days from the date the Court rules on all pending motions to dismiss (docs. #85, 137) to file and serve an amended complaint repleading those Counts against Westminster that are dismissed without prejudice. If no timely amended pleading is filed and served, the Court will dismiss Count II against Westminster with prejudice and without further notice.[6] The defendants may renew their objections to the Counts concerning state law claims if Pet Quarters files a timely amended complaint.

**IT IS SO ORDERED**, this 1st day of June, 2006.

RODNEY S. WEBB, District Judge
United States District Court

---

[6] Counts VII, XII, and XIII would remain dismissed without prejudice.