```
         IN THE UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF ARKANSAS
                  WESTERN DIVISION
```

PET QUARTERS, INC.,                                    PLAINTIFF


V.                CASE NO. 4:04-CV-697 (RSW)

THOMAS BADIAN, RHINO ADVISORS, INC.,
AMRO INTERNATIONAL, S.A., SPLENDID ROCK
HOLDINGS, LTD., LADENBURG THALMANN & CO., INC.,
MICHAEL VASINKEVICH, H.U. BACHOFEN,
HANS GASSNER, JAMES DAVID HASSAN,
MARKHAM HOLDINGS LIMITED, CURZON CAPITAL
CORPORATION, WESTMINSTER SECURITIES CORP.,
AND JOHN DOES 1 TO 50 INCLUSIVE,                       DEFENDANTS


## OPINION AND ORDER

**I. Introduction**

Before the Court is defendants Markham Holdings Limited's and James David Hassan's Motion to Dismiss (doc. #85). Plaintiff Pet Quarters, Inc., has responded and opposes the Motion. For the reasons set forth below, the motion is **GRANTED IN PART AND DENIED IN PART**.

**II. Background**

Pet Quarters is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in Arkansas. Pet Quarters supplies pet food and other pet supplies to consumers and professionals through the Internet and mail order catalogs.

In early 1999, Pet Quarters began to look for capital funding sources to help aid in the growth of its business.[1] During this search, Pet Quarters was introduced to defendant Ladenburg Thalmann and Company, a capital investment firm. Following a series of conversations and referrals, Ladenburg introduced Pet Quarters to defendant Thomas Badian. Pet Quarters eventually entered into three financing arrangements with Badian and his investment companies.

On February 23, 2000, Pet Quarters entered into a common stock and warrants purchase agreement ("the Agreement") with Amro International ("Amro") and Markham Holdings Limited ("Markham"), both Badian investors. Under the Agreement, Pet Quarters sold 619,047 shares of its common stock to Amro and 95,238 shares to Markham, for a total of less than $1.5 million. The Agreement contained repricing provisions under which Amro and Markham could demand additional shares of stock in the event the share price fell over a defined period of time.[2] Hassan signed the Agreement on behalf of Markham.

On March 15, 2000, Pet Quarters entered into an equity line of credit with Splendid Rock Holdings ("Splendid Rock"), another Badian investor. Pet Quarters could periodically draw on the

---

[1] At the time, Pet Quarters' stock traded on the Over-the-Counter Bulletin Board.

[2] This Agreement also contained an arbitration clause that read, "Any dispute under this Agreement shall be submitted to arbitration under the American Arbitration Association (the "AAA") in New York City, New York . . . ."

2

line of credit in exchange for shares of common stock, issued at a discount to market price.

On May 2, 2000, Pet Quarters entered into a loan agreement with Amro in the amount of $1 million. The loan was made subject to the terms and conditions of a convertible debenture, which allowed Amro to convert any outstanding principal into shares of Pet Quarters' common stock after a certain period of time. By March 2001, Pet Quarters' stock was trading at pennies per share, down from a high of more than six dollars on September 1, 1999.

On July 21, 2004, Pet Quarters filed this action against thirteen named defendants, alleging their involvement in a scheme to defraud Pet Quarters and to manipulate downward the price of its securities in violation of federal and state laws. In general, Pet Quarters alleges that the defendants are seasoned practioners of a "death spiral" funding scheme in which they provide financing to a target company and proceed to aggressively short-sell its stock in the hope that such short sales will drive down the price of the target company's securities. Pet Quarters accuses Markham and Hassan of participating in this "death spiral" scheme to manipulate the price of Pet Quarters' stock.

The Complaint sets forth nine claims against both defendants: (1) violation of § 10 of the Securities Exchange Act of 1934 and SEC Rule 10b-5 (Counts I & II), (2) violation of sections 23-42-507 and 23-42-508 of the Arkansas Code Annotated (Count III), (3) common law fraud (Count IV), (4) aiding and abetting breach of fiduciary duty (Count VI), (5) prima facie

tort (Count VII), (6) constructive fraud (Count IX), (7) civil conspiracy (Count XII), (8) tortious interference with contracts (Count XIII), and (9) disgorgement and restitution under the Exchange Act (Count XVI).  The Complaint sets forth one claim against Markham for negligent misrepresentation (Count XV).  In addition, the Complaint sets forth a claim against Hassan for control person liability under § 20A of the Exchange Act (Count XIV).  Markham and Hassan move to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, under Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") for failure to plead fraud with sufficient particularity, and under Rule 12(b)(2) for lack of personal jurisdiction over Hassan.[3]

**III. Discussion**

    A.   <u>Standard of Review</u>

When considering a motion to dismiss under Rule 12(b)(6), the Court must assume that all facts alleged in the complaint are true and construe the complaint in a light most favorable to the plaintiff.  <u>Coleman v. Watt</u>, 40 F.3d 255, 258 (8th Cir. 1994).  The court should grant the motion only if the plaintiff can prove no set of facts that would entitle them to relief.  <u>Id.</u>  However, the court is free to reject "legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal

---

[3] Both parties have waived their right to proceed in arbitration (docs. #177, 178).  Accordingly, the Court will address each defendant's Motion to Dismiss.

4

conclusions cast in the form of factual allegations." <u>Varner v. Peterson Farms</u>, 371 F.3d 1011, 1015 (8th Cir. 2004).

Rule 9(b) of the Federal Rules of Civil Procedure provides a heightened standard of pleading when a plaintiff alleges fraud or mistake. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Conclusory allegations that a defendant's conduct was fraudulent and deceptive are insufficient to satisfy Rule 9(b). <u>Commercial Prop. Investments, Inc. v. Quality Inns Intern., Inc.</u>, 61 F.3d 639, 644 (8th Cir. 1995).

    B.   <u>Personal Jurisdiction Over Hassan</u>

The Court must first address Hassan's personal jurisdiction argument. Hassan argues he does not have sufficient contacts with the United States to establish personal jurisdiction over him. In order to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing that the Court has personal jurisdiction over the defendant. <u>Epps v. Stewart Info. Services Corp.</u>, 327 F.3d 642, 647 (8th Cir. 2003). The plaintiff bears the burden of proof of whether jurisdiction exists. <u>Id.</u> The Court must view the evidence in a light most favorable to the plaintiff and resolve all factual conflicts in favor of the plaintiff. <u>Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd.</u>, 89 F.3d 519, 522 (8th Cir. 1996).

5

The parties seem to combine their personal jurisdiction analysis with a control person analysis, suggesting that if the Court concludes Hassan is a control person the Court has jurisdiction over him. Although not cited by either party, this analysis is similar to <u>San Mateo County Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.</u>, 979 F.2d 1356 (9th Cir. 1992). In that case, the court held that personal jurisdiction exists if "the plaintiff makes a non-frivolous allegation that the defendant controlled a person liable for the fraud." <u>Id.</u> at 1358.

As it has previously, this Court rejects the contention that control person liability can confer personal jurisdiction over a defendant. Control person liability and personal jurisdiction are separate issues. The broad understanding of control person liability adopted by the securities laws cannot on its own support personal jurisdiction. The Court finds the reasoning set forth in <u>City of Monroe Employees Ret. Sys. v. Bridgestone Corp.</u>, 399 F.3d 651, 667-68 (6th Cir. 2005) to be persuasive. As the court stated:

> This approach would, . . . , "impermissibly conflate statutory liability with the Constitution's command that the exercise of personal jurisdiction must be fundamentally fair." Though they may involve a similar contact-based analysis, ultimately, the two inquiries must be distinct: "control person liability under the securities laws is not germane to the issue of personal jurisdiction" (internal citations omitted).

6

Id. (quoting In re Baan Co. Sec. Litig., 245 F. Supp. 2d 117, 128-29 (D.D.C. 2003) and FDIC v. Milken, 781 F. Supp. 226, 234 (S.D.N.Y. 1991)).

In determining whether to exercise personal jurisdiction over a defendant, the Court must consider whether the exercise of jurisdiction complies with the state long-arm statute and, if so, whether it comports with due process. Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998).[4] Because § 27 of the Exchange Act provides federal courts with personal jurisdiction to the full extent of the Due Process Clause, the Court only needs to consider whether the requirements of due process are satisfied.

To satisfy the Due Process Clause, a defendant must have sufficient "minimum contacts" with the forum state, such that summoning the defendant to the forum state would not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Sufficient minimum contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). There must be some act by which the defendant "purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws."

---

[4]Because plaintiff's action is based on a federal statute, the forum applicable to jurisdiction analysis is the United States rather than a forum state.

7

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). The defendant's contacts must create a "substantial connection with the forum State." Id.

Personal jurisdiction can be specific or general. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Specific jurisdiction exists when the contacts with the forum arise out of facts that form the cause of action. Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2006). General jurisdiction exists when the contacts with the forum have no relationship to the cause of action but are continuous and systematic. Id.

When determining whether a defendant has a substantial connection with a forum state, the Court must look at the following factors: (1) the nature and quality of the contacts with the forum state, (2) the quantity of the contacts with the forum state, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002). The last two factors are not as important and are not determinative. Id.

Hassan argues the Complaint does not include sufficient contacts for jurisdiction. The only contact Pet Quarters alleges in either the Complaint or in its response to Hassan's motion is his signing of the Agreement on Markham's behalf. The record is unclear as to where the Agreement was actually signed, the United States or Europe. However, in Sedona Corp. v. Ladenburg Thalmann

8

& Co., the court held that the plaintiff corporation had not proven personal jurisdiction over a number of defendants present in this case when the only contact alleged was the signing of several agreements on behalf of several finance companies. 2006 WL 2034663, at *9 (S.D.N.Y. July 19, 2006). The Sedona court concluded that such a simple action could not make those defendants anticipate that they would be haled into court in the United States.

This Court agrees. The burden to prove jurisdiction is on Pet Quarters. Pet Quarters has brought forth no information regarding any substantial contacts Hassan has with the United States. One act of signing the Agreement, most likely in Europe, that he had no part in negotiating is not a substantial contact that satisfies the protections of due process. Although the Agreement ultimately formed a part of this litigation, Hassan's lack of any other involvement with the Agreement could not have made him anticipate that he could be haled into court here. Pet Quarters has not met its burden to prove this Court has personal jurisdiction over Hassan. Therefore, all claims against Hassan are **DISMISSED FOR LACK OF PERSONAL JURISDICTION.**

    C.   <u>Misrepresentation Claim</u>

Section 10(b) of the Act prohibits fraudulent conduct in the sale and purchase of securities. Rule 10b-5, promulgated by the SEC under § 10(b), provides,

> It shall be unlawful for any person, directly or indirectly, . . .

>    (a) To employ any device, scheme, or artifice to defraud,
>
>    (b) To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
>    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The scope of conduct prohibited by Rule 10b-5 is controlled by the language of § 10(b) of the Act. Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 173-175 (1994).

Claims brought under Rule 10b-5 and § 10(b) are governed by heightened pleading standards adopted by Congress under the PSLRA. Congress enacted two heightened pleading standards under the PLSRA. The complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation . . . is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." 15 U.S.C. § 78u-4(b)(1). The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

To establish a misrepresentation claim under Rule 10b-5, the plaintiff must show "(1) misrepresentations or omissions of material fact or acts that operated as a fraud or deceit; (2) causation, often analyzed in terms of materiality and reliance;

(3) damages; and (4) fraudulent activity occurring in connection with the purchase and sale of a security." In re Navarre Corp. Sec. Litig., 299 F.3d 735, 741 (8th Cir. 2002). Scienter is also an essential element of a Rule 10b-5 claim. Id.

Here, Pet Quarters alleges that Markham made various misrepresentations and omissions leading up to and during the parties' execution of the Agreement, in violation of § 10b and Rule 10b-5. Markham contends Pet Quarters' allegations of securities fraud fail because Markham never made representations of any kind to Pet Quarters; all alleged misrepresentations were made by defendant Badian.[5] Pet Quarters responds that entities can be liable under § 10b for the misrepresentations of their agents and that Badian is such an agent for Markham.

The Court agrees with Markham that all of the alleged misrepresentations were made by either Vasinkevich or Badian. However, the Court does not agree that Badian's alleged misrepresentations cannot be imputed to Markham.

Corporations can be held liable under §10b for the misrepresentations of their agents. In re Alstom SA Sec. Litig., 406 F. Supp. 2d 433, 468 (S.D.N.Y. 2005); accord Zurich Capital Markets, Inc. v. Coglianese, 332 F. Supp. 2d 1087, 1106 (N.D. Ill. 2004). To rule otherwise would exempt Markham from

---

[5]The defendant also contends that Pet Quarters' claims are barred by the applicable statute of limitations. For the reasons explained in the Court's Opinion and Order entered on April 28, 2006 (doc. #159), the Court rejects this argument.

11

liability under §10b because corporations only act through their agents. Zurich Capital, 332 F. Supp. 2d at 1106 n.5.

This does not mean, however, that Pet Quarters had adequately alleged that Badian served as an agent of Markham during the Common Stock Agreement negotiations. "A plaintiff must plead facts showing the existence and scope of the agency relationship in order to establish primary liability under Section 10(b), especially where, as here, the agency relationship is not based on the classic corporation/employee model where a corporation can only acts through its employees and agents." Id. at 1106.

Here, the broad allegations of Pet Quarters do not meet this standard. Pet Quarters alleges nothing more than Badian "acted on behalf of" Markham. Such a conclusory allegation that Badian acted as an agent for Markham is insufficient under Rule 9(b) and the PSLRA. See Sedona Corp., 2005 WL 1902780, at *11 (S.D.N.Y. Aug. 9, 2005)(holding that "generalized references" to agency in connection with alleged misrepresentations made by Ladenburg were insufficient under Rule 9(b)).[6] Markham's Motion is **GRANTED** as to Count I, and Count I is **DISMISSED WITHOUT PREJUDICE**.

---

[6] Pet Quarters' allegations of agency would fail even under the relaxed pleading standards of Rule 8 of the Federal Rules of Civil Procedure. See In re Alstom, 406 F. Supp. 2d at 469 (holding that "the pleading of the existence of an agency relationship need not meet the heightened standards of Rule 9(b) or the PSLRA").

12

D. <u>Manipulation Claim</u>

In Count II of the Complaint, Pet Quarters alleges that Markham manipulated the market for Pet Quarters' securities in violation of § 10b and Rule 10b-5. Markham contends that Pet Quarters has failed to plead its manipulation claim with sufficient particularity.

To state a claim for market manipulation, the plaintiff must adequately allege that (1) it was injured, (2) in connection with the purchase or sale of securities, (3) by relying on a market for securities, (4) controlled or artificially affected by defendant's deceptive or manipulative conduct, and (5) the defendants engaged in the manipulative conduct with scienter. <u>In re Blech Sec. Litig.</u>, 961 F. Supp. 569, 582 (S.D.N.Y. 1997) (citing <u>Ernst & Ernst v. Hochfelder</u>, 425 U.S. 185, 199 (1976)). Although Rule 9(b) pleading standards are construed in a more relaxed fashion for manipulation claims, the plaintiff must still specify "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for securities at issue." <u>Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC</u>, 223 F. Supp. 2d 474, 486 (S.D.N.Y. 2002).

Pet Quarters has adequately alleged market manipulation against Markham. The Complaint provides a great deal of detail regarding the nature of the conduct and the techniques allegedly employed in the scheme. Although Pet Quarters has not set out

details regarding every trade made by Markham, it has provided a detailed chart of stock conversions and stock price differences that support its death spiral theory. Such allegations are sufficient to satisfy the PSLRA and Rule 9(b). See Nanopierce Technologies, Inc. v. Southridge Capital Mgmt. LLC, 2002 U.S. Dist. LEXIS 24049, at *18 (S.D.N.Y. October 10, 2002)(finding a detailed chart of the sales alleged to underlie the death spiral scheme to be sufficient); Global Intellicom, Inc. v. Thomson Kernaghan & Co., 1999 WL 544708, at *8 (S.D.N.Y. July 27, 1999)(stating that plaintiff only need to lay out "the nature, purpose, and effect of the fraudulent conduct and the roles of the defendant without requiring specific instances of conduct").

Pet Quarters has also adequately plead scienter as to Markham. As stated earlier, the PSLRA provides that "the complaint shall, . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Scienter under Rule 10b-5 means the intent to deceive, manipulate, or defraud. Kushner v. Beverly Enterprises, Inc., 317 F.3d 820, 827 (8th Cir. 2003)(citing Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 654 (8th Cir. 2001)). In order to survive a defendant's motion to dismiss, the plaintiff's allegations must collectively add up to both a reasonable and strong inference of the required state of mind. Green Tree Fin. Corp., 270 F.3d at 660-61. Plaintiff can establish an inference of scienter by (1)

14

identifying facts that show conscious or reckless behavior by the defendant or (2) by alleging facts showing a heightened motive and opportunity to engage in the fraud.  Id. at 654; accord In re Blech Sec. Litig., 961 F. Supp. 569, 582 (S.D.N.Y. 1997).

Here, the structure of the financing agreement between Pet Quarters and Markham provided Markham with a heightened motive and opportunity to defraud Pet Quarters.  Markham was in a position to profit considerably from short selling Pet Quarters' stock in a declining market on account of its ability to cheaply obtain additional shares of common stock.  See Internet Law Library, Inc., 223 F. Supp. 2d at 484 (finding similar facts to be sufficient).  Given the unique motive and opportunity of Markham, Pet Quarters has carried its burden of pleading scienter.

Markham's final contention as to Count II is that Pet Quarters does not have standing to bring such a claim.  Markham argues that the exercise of conversion rights in securities does not constitute a "purchase" or "sale" of securities, as required under § 10b.

A private right of action under § 10b is limited to actual purchasers and sellers allegedly defrauded by the manipulation. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730-32 (1975).  "The terms 'sale' and 'sell' each include any contract to sell or otherwise dispose of."  15 U.S.C. § 78c(a)(14) (2006). The issuance of a corporation's stock to another party is a sale

under § 10(b) and Rule 10b-5.  See Frankel v. Slotkin, 984 F.2d 1328, 1333 (2d Cir. 1993) (concluding the disposition of one's own stock is a "sale").

According to the Complaint, Pet Quarters originally sold to Markham 95,238 shares of its common stock in February 2000. After that date, its stock price began to fall allegedly as a result of the Defendants' market manipulation.  Pet Quarters alleges that by September 2000, this market manipulation forced the price low enough that Markham exercised its repricing option. This subsequent transaction meets the definition of a sale under the Exchange Act.  Pet Quarters was a seller of its security and the sale was connected to the alleged market manipulation of the Defendants.  Therefore, Pet Quarters has standing to bring Count II.  Accordingly, Markham's motion is **DENIED** as to Count II.

    E.    <u>Count XVI - Disgorgement and Restitution</u>

Count XVI is not an independent substantive legal claim. Rather, Count XVI represents a stand-alone request for the specific remedies of disgorgement and restitution in regard to plaintiff's § 10(b) claim against the defendant.  If Pet Quarters is setting these particular remedies in their own Count to draw attention to their importance to Pet Quarters, their importance is duly noted.  However, Pet Quarters already asked for these remedies in its Prayer for Relief, so this Count is unnecessary. Accordingly, Count XVI against Markham and Hassan is **DISMISSED WITH PREJUDICE**.

F.   Remaining State Law Claims

The remaining claims against Markham and Hassan are based on state law.  The Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a).  Under 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction if the state claims present complex issues of state law, the state claims predominate the federal claims, or the district court has dismissed all claims over which it has original jurisdiction.  As the Eighth Circuit stated in Gibson v. Weber, "Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims . . . ."   433 F.3d 642, 647 (8th Cir. 2006).

The Court finds itself in a unique position of having dismissed some federal counts, upheld some federal counts, and allowed Pet Quarters to replead those counts dismissed without prejudice.  Furthermore, in the Court's Order resolving Defendant Westminster's Motion to Dismiss, the Court declined to exercise supplemental jurisdiction and stated it would evaluate the state claims after Pet Quarters repled its federal claims if Westminster renewed its objection (doc. #169).  Therefore, to stay consistent with its prior rulings, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  Accordingly, Counts III, IV, VI, VII, IX, XII, XIII, and XV against Markham are **DISMISSED WITHOUT PREJUDICE.**

**IV. Conclusion**

For the reasons stated above, Markham's and Hassan's Motion to Dismiss (doc. #85) is **GRANTED IN PART** and **DENIED IN PART.** The claims against Hassan are **DISMISSED FOR LACK OF PERSONAL JURISDICTION.** Count I against Markham is **DISMISSED WITHOUT PREJUDICE.** Count II against Markham is sufficient as pled. Count XVI is **DISMISSED WITH PREJUDICE.** Counts III, IV, VI, VII, IX, XII, XIII, and XV against Markham and Hassan are **DISMISSED WITHOUT PREJUDICE.**

Pet Quarters has twenty (20) days from the date this order is filed to file and serve an amended complaint repleading the counts that were dismissed without prejudice regarding all defendants that remain in this action. If no timely amended pleading is filed and served, the Court will dismiss Count I against Markham with prejudice and without further notice.[7] The defendants may renew their objections to the counts concerning state law claims if Pet Quarters files a timely amended complaint.

**IT IS SO ORDERED.**

Dated this 30th day of March, 2007.

*Rodney S. Webb*
RODNEY S. WEBB, District Judge
United States District Court

---

[7] Count II against Markham and Count XIV will obviously remain and continue and Counts III, IV, VI, VII, IX, XII, XIII, and XV would remain dismissed without prejudice.

18